Tayiok, Chief-Justice*,
disseniiente_The definition of Burglary, as furnished by the best Writers on criminal law, and explained by adjudged cases, does, in my opinion, include the case under consideration. The mansion, according to Male, not only includes the dwelling-house, hut also all the outhouses — such as barns, stables, cow-houses, dairy-houses, and the like, if they be part of the messuage, though they be not under the same roof, or joining contiguous to it. An outhouse upon a lot in a town, cannot be more completely placed within the protection affor ded by law to the mansion-house, than this store was. It was three or four feet only from the dwelling-house, and conm eted with it by a gate, and it was under the same fence on all sides, where a fence could he made, so as to be within the curtilage, or piece of ground lying near, and belonging to the dwelling-house. In these circumstances, it is stronger than Castle’s case (l Hale 558) where two men were’eondomned for breaking open a back-house of Castle’s, eight or nine yards distant from the dwelling-house, only a paie reaching between them. It is as strong ^as the case of Gibson and *256 others reported in Leach. Tlicre the siiop was built close and adioinine; to the <l\ve!line:-house., but there was no . . . , , , , internal communication between the house and the shop, and no person slept in the shop. The only door to the shop was in the court-yaid before the house and shop, which court-yard was inclosed by a wall three feet high. In the wall ivas a wicket which served as a communication to both the house and the shop. The burglary was committed in the shop, and the conviction was held to be proper. That case must have proceeded on the principle that the proximity of the shop to the mansion, placed it under the same privilege and protection. • It was burglary, because the shop was within the curtilage, and not because the house and the shop were both inclosed by the same fence, for that is not essential to the formation of the curtilage, as appears from Brawn's case, cited in East's F. C. 493. Nor can it be collected from Castle's case, already cited, that there was any common inclosure.
These cases seem to me to show the. conviction here to have been proper j and I ihink their aullmrity is strengthened by the cases relied upon in behalf of the prisoner, which being founded, in my view of them, on exceptions to the rule, prove the existence of the rule itself.
The first is Garland’s case fLeach 130) where the breaking was of an outhouse, and occupied by the owner witlqhis dwelling-house, and separated therefrom by an open passage of eight feet wide, but the outhouse was not connected with the dwelling-house by any fence inclosing both. The prisoner was acquitted, because the outhouse was so separated from the dwelling-house, and not within the same common fence. But in the case before us both circumstances exist, from the absence of one of which, the prisoner was acquitted in Garland’s case. For here the store was connected with the dwelling-house, and both were inclosed within the same fence j for I consider a fence on three sides, where the front is *257 on a street in a town, as equal to a fence all round in °^ier situation. But in Garland’s case, the prisoner must have been convicted without the fence, if the out-j)0Use Oeen connected with the dwelling-house by a pale, instead of being separated from it, by an open passage, otherwise the principles of Castle’s case would have been disregarded.
Parker’s case, cited from 4 John. 433, is the same as Garland’s case, save only in the distance of the store from the dwelling-house. It was not connected with tiie house, nor was there any inclosure.
Egginton’s case (2 Bos. & Pul. 508) was decided on grounds which have no application to the circumstances of this case. From the facts stated in that case,— from the points relied upon by the prisoner’s Counsel in arguing it, and from, the manner in which it is constantly quoted by writers, I infer that the judgment proceeded on the ground that the centre building was severed from the mansion-house by lease or otherwise, and adapted to the use of several manufactories, the partners of which had it on their joint occupation ; consequently, it could not be considered as the mansion-house of M. E. Boulton. So if a man let a shop only, and sever it from his house for years, and the party who hath the shop does not lodge in it, and this be broke open in the night-time, it is no burglary. Kelyng 84. If Boidton had used the centre building in a manufactory of his own exclusively, it must have been considered as part of his dwelling-house, although there was no internal communication between them.
The books may, be searched in vain for any rule or case, referring to the use made of an outhouse as tiie criterion whether burglary can be committed by breaking it open. A shop or manufactory may, in judgment of law, be part of the mansion-house, as much as a dairy or stable, or any other house subsidiary to the comfort and *258 enjoyment of the mansion, as some of the cases already remarked upon, show. And Mr. Justice Blackstone says, if the barn, stable or warehouse, be parcel of the mansion, and within the same common fence, a burglary may be committed therein, for the capital house protects and privileges all its branches and appurtenants, if within the curtilage or homestall. (4 Bl. Com. 225). Lord Coke divides a mansion-house into two branches, viz. to inset edifices, as hall, parlour, buttery, kitchen and lodging chambers, and the outset buildings, as barns, stables, cow-houses, dairies, &c. All these are parcels of the mansion-house, and will pass by that name. Without ascribing to his lordship’s et cetera, the same extent which he gives to some of Littleton’s, we may fairly understand it as including all the houses within the home-stall, whatever may be their use. It would be strange too in practice, to protect a more remote dairy, and leave unprotected a contiguous store, presenting much stronger temptations.
This is my view of the case maturely considered, though expressed with all possible brevity j but as it may be erroneous, I am highly gratified that the opinion of my brothers renders it harmless to the prisoner.
Ter Curiam. — Judgment reversed, and rule for a new trial made absolute.